# Richmond.

## COMMERCIAL BANK v. CABELL.

### JANUARY 12, 1899.

### Absent, Cardwell and Riely, JJ.

1. INJUNCTION AGAINST PROCEEDING AT LAW—*Set-Off—Partnership—Insolvency—Inadequate Remedy.*—Ordinarily a court of equity will not enjoin an action at law at the instance of the defendant to enable him to set off an alleged balance due him on partnership account, as a settlement may show a balance against him instead of in his favor. But where it is certain that the balance will be in favor of the complainant, though the amount thereof is unascertained, and the debtor partner is insolvent, and the complainant would be otherwise without remedy to get the benefit of his offsets, equity will stay the proceeding at law and afford relief. In such case equity is the proper forum to settle the accounts, and the remedy at law is not adequate.

2. ASSIGNMENT BY HUSBAND OF DECEASED WIFE'S CHOSES—*What Passes—Set-Offs by Maker against Husband and his Assignee*—An assignment by a surviving husband of a note which was the property of his deceased wife is a violation of the rights of her personal representative, and amounts to no more than an order on him, when appointed, in favor of the assignee, for whatever interest he may have in its proceeds. The husband, as sole distributee of the wife, is entitled to net proceeds of the note after the payment of debts and costs of administration, but if, at the time of the assignment, he is indebted to the maker, his assignee can stand on no higher ground than he does, and the maker is entitled to set off such indebtedness against his liability on the note.

3. COLLATERALS—*Substitution of Forged Collaterals—Return of Genuine to Owner—Who has Title.*—If a note of a third person payable to a wife be loaned by her to her husband for the purpose of enabling him to pledge it as collateral for a loan, and he so pledges it, and, after the lapse of two years, renews the loan and substitutes a forged note for the genuine, and returns the genuine to his wife, and if it appears that

he did not act as her agent, nor with her knowledge or acquiescence in the substitution, and that she was without fault or negligence in the premises, her title will be deemed superior to that of the former pledgee.

Appeal from a decree of the Corporation Court of the city of Danville pronounced July 7, 1897, in a suit in chancery wherein the appellee was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The bill in this cause set out the facts detailed in the opinion of the court, and charged, amongst other things, that the note of June 2, 1892, which was admitted to be genuine, was transferred to appellant long after its maturity, and hence the appellant took it subject to all the equities between the parties; that complainant had paid the funeral expenses of Ann E. Coleman, amounting to $103, taxes $33, and her doctor's bill in her last sickness, $50—in all, $186.00, for which he should have credit on the note; and that the residue of the note should be credited on what John A. Coleman, the surviving husband and sole distributee of Ann E. Coleman, owed the complainant on a settlement of the partnership account of Cabell & Coleman, composed of the complainant and John A. Coleman.　The following is a copy of the note of June 2, 1892:

"DANVILLE, VA., June 2nd, 1892.
" On demand we, Cabell & Coleman, principals, and John R. Cabell, security, promise to pay to Ann E. Coleman, or order, without offset, negotiable and payable at the banking house of of W. S. Patton, Sons & Co., Danville, Va., One Thousand Ninety-nine $\frac{99}{100}$ dollars for value received.　Homestead and all other exemptions waived as to this debt, with interest from date.

CABELL & COLEMAN,
JOHN R. CABELL."
Endorsed "A. E. COLEMAN."

*Peatross & Harris* and *Christian & Christian*, for the appellant.

*Green & Miller* and *Berkeley & Harrison*, for the appellee.

HARRISON, J., delivered the opinion of the court.

The salient facts, out of which this controversy grows, appear to be that J. R. Cabell and his son-in-law, John A. Coleman, became partners in the tobacco warehouse business in September, 1885. This partnership, being insolvent, terminated in October, 1888, with the understanding that J. R. Cabell, his partner, being utterly insolvent, was alone to wind up its business. On June 18, 1887, the firm of Cabell & Coleman borrowed from Ann E. Coleman, the wife of John A. Coleman, $949.56, and executed to her its note for that amount, payable on demand, with J. R. Cabell as surety thereon. Subsequently, John A. Coleman deposited this note, belonging to his wife, with the Commercial Bank, as collateral security for his individual debt to the bank. It remained with the bank as such collateral until March 8, 1892, when John A. Coleman deposited with the bank, in its stead and as a renewal thereof, a note of like amount, purporting to be executed by the same parties, but which was in fact a forgery as to each of the parties thereto, and received from the bank the original note, which he returned to his wife.

On June 2, 1892, Ann E. Coleman surrendered this note to her father, J. R. Cabell, and took from him, in its stead, a new note of that date, payable on demand, and executed by Cabell & Coleman, with J. R. Cabell as surety, for $1,099.98, that being the original debt of the firm to her with interest added. Ann E. Coleman died in October, 1892, with this last named note in her possession. On March 31, 1893, John A. Coleman, who had in the meantime obtained possession of this note, endorsed the name of his wife thereon, and deposited it with the Commercial Bank as collateral security for two notes of his own, upon which he had forged the name of his father, Daniel Cole-

man, as surety. In September, 1893, the estate of Ann E. Coleman was committed to the sergeant of the city of Danville for administration; and in August, 1896, the Commercial Bank instituted an action at law in the name of the sergeant, as administrator, for its benefit, against Cabell & Coleman and J. R. Cabell, to recover both notes—one for $949.56, and the other for $1,099.98.

The note for $949.56, being a forgery, cannot be recovered, and therefore the controversy is narrowed to the right of John R. Cabell, the only responsible party, to enjoin the proceeding at law in order that he may offset the note for $1,099.98 with the indebtedness of John A. Coleman to him, on partnership account, as a member of the firm of Cabell & Coleman.

The bill filed by John R. Cabell for this purpose is free from the objection of multifariousness, and states a case entitling the complainant to the intervention of a court of equity.

Ordinarily a court of equity will not suspend the course of legal proceedings to enable the defendant in an action at law to set off a balance which he alleges to be due him on partnership account. This rule is founded upon the idea that a settlement of the accounts might show a balance against the complainant instead of for him, and courts of equity will let the law take its course rather than suspend it upon doubtful results. Where, however, the facts alleged and shown, as in the case at bar, make it certain that the settlement will show a balance in favor of the complainant, although the precise amount of that balance does not appear, and it is further alleged that the debtor partner is wholly insolvent, thus making it plain that the complainant will be remediless unless he is allowed to have the benefit of his offsets in the pending suit, a court of equity will, in order to prevent wrong and injustice, stay the proceeding and afford relief. In such a case, there is no adequate remedy at law, for although it is clear that there will be, on settlement, a balance in favor of the complainant, still the amount is undetermined, and can only be ascertained by a settlement of the

partnership accounts; and to settle such accounts is one of the principal heads of equity jurisdiction.  Earl of Oxford's Case and Notes; 2 Leading Cases in Equity, Pt. II., p. 1291; *Hewitt* v. *Kuhl*, 25 N. J. Eq. 24.

It is contended that John R. Cabell is not entitled to his offsets, as against the Commercial Bank, because John A. Coleman was an intermediate assignee of the note in question from Ann E. Coleman, and an intermediate assignor of the same to the bank.  Code, sec. 2660.  This note was in Ann E. Coleman's possession when she died.  Her husband subsequently found it, forged his wife's name upon it, and thus transferred it to the bank.  It is true that John A. Coleman was sole distributee of his wife, and that, subject to her debts and costs of administration, he would have been entitled to the proceeds of this note; but he was never at any time, in the sense contended for, the assignee of his wife.  In transferring the note to the bank, he acted in violation of the rights of his wife's personal representative, and its transfer amounted to no more than an order in favor of the bank, upon his wife's administrator, when appointed, for whatever interest he might have in its proceeds.

At the time that John A. Coleman, as distributee of his wife, became entitled to an interest in this note, he was heavily in debt to John R. Cabell, the only party responsible for its payment.  Under these circumstances, John R. Cabell was clearly entitled to set off against his indebtedness to John A. Coleman, the latter's indebtedness to him; and, when the bank took the note from Coleman, it stood in his shoes as distributee of his wife with no better title or greater interest than he had, and held the note subject to all the equities that attached to it in his hands.

It is earnestly contended in argument that the note for $1,099.98 is a renewal of and represents the original genuine note of Cabell & Coleman to Ann E. Coleman for $949.56, which was rightfully held by the bank as collateral, and surrendered by it March 8, 1892, for a forged note tendered in

renewal thereof by John A. Coleman. That the bank having been thus fraudulently induced to surrender to Ann E. Coleman the gennine note, neither she nor those claiming under or through her can now have the benefit of that which represents the gen uine note, without making good to the bank the forged note taken in lieu thereof.

This view of appellant's rights is not presented by the pleadings, and the evidence does not show that the bank held the original genuine note with Mrs. Coleman's knowledge and consent. If, however, it be presumed that Mrs. Coleman, for her husband's accommodation, loaned him her note to use as collateral in obtaining money from the bank, it may with equal propriety be presumed that it was her refusal to give him further indulgence or means of credit, and her demand of him to close the transaction and return her note that precipitated the husband's action.

After the bank had held the note as collateral for nearly two years, John A. Coleman substituted a forged note in its place, and returned the genuine note to its owner, who died in possession of it. There is no evidence that he was in any sense the agent of his wife, nor is it pretended that his representations to the bank were made with her acquiescence or knowledge, or that there was any circumstance to arouse her suspicion. No breach of duty, or failure of duty, or negligence of any sort, is brought home to her. She got back her own property with the bank's consent, wholly innocent of any act on her part to compromise her position.

On the other hand the bank held the note as collateral for a debt due and enforcible. Of its own accord it chose to renew the loan, and permitted a forged collateral to be foisted upon it in the place of a genuine note. It was plainly the duty of the bank, under the circumstances disclosed by the record, to enquire as to the genuineness of the note before receiving it. The failure to perform that duty has brought about the loss of which complaint is now made.

It may be added that the bank was informed as early as August, 1893, that the $949.56 note held by it was a forgery. If the right to reclaim the genuine note was relied on, the necessary proceeding for that purpose should have been promptly instituted. Instead of prompt action, the fraud has been acquiesced in for three years, and finally an action at law brought to recover on the forged note.

There is no error in the decree complained of, and it must be affirmed.

*Affirmed.*